**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SENG LONG KIM,** | : | **CIVIL ACTION** |
| **et al.,** | : | |
| ***Plaintiffs*,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **JOHNY M. PIERRE,** | : | **No. 25-cv-141** |
| **et al.,** | : | |
| ***Defendants*.** | : | |

**MEMORANDUM**

**KENNEY, J.** **July 31, 2026**

The instant case arises from a motor vehicle accident that occurred on Interstate 95 ("I-95") in Bensalem, Pennsylvania. ECF No. 1. Plaintiffs bring claims for negligence and loss of consortium stemming from injuries Plaintiffs each sustained in the crash. *Id.* In preparation for trial, the Parties have exchanged their respective expert reports. *See* ECF No. 69. Presently before the Court is Defendants' Motion to Preclude the Expert Testimony of Keith A. Bergman, P.E. ECF No. 81. For the reasons discussed below, the Motion will be **GRANTED in part** and **DENIED in part**.

## I. INTRODUCTION

On January 9, 2025, Plaintiffs Seng Long Kim, Srey Pov Art, and Som Art Hy initiated the above-captioned action by filing a six-count Complaint asserting claims for negligence and loss of consortium against Defendants Johny M. Pierre ("Mr. Pierre"), Star Logistics and Hospitality Services, LLC, Star Laundry, Inc., Clean World Laundry Corp., and Star Logistics Services, LLC. (collectively, "Defendants").[1] ECF No. 1. Defendants filed Answers to the Complaint and denied

[1] At the time of filing the Complaint, Plaintiffs named as an additional named Defendant, Ryder Truck Rental Inc. ("Ryder"). ECF No. 1 ¶ 9. The Parties stipulated to dismissal of Defendant

the substance of Plaintiffs' allegations. ECF Nos. 15, 26. Thereafter, in accordance with the Court's Scheduling Order,[2] the Parties completed discovery. ECF No. 69. As part of expert discovery, Plaintiffs retained expert witness Keith A. Bergman P.E. *See* ECF No. 82. Bergman, an engineer, prepared an expert report (the "Report") opining on the motor vehicle accident and Mr. Pierre's conduct leading up to, and during the crash. *See* ECF No. 81-4 (Bergman's Expert Report). Specifically, Bergman opines on the speed Mr. Pierre was traveling and how much distance he required between his vehicle and the traffic ahead to break in time and avoid the collision. *See id.*

On May 28, 2026, Defendants Mr. Pierre and Start Logistics and Hospitality Services, LLC (hereinafter, "Defendants") moved to preclude the expert testimony of Keith A. Bergman, P.E.[3] ECF No. 81. The Motion has been fully briefed, ECF Nos. 82 (Plaintiffs' Opposition), 87 (Defendants' Reply), 88 (Plaintiffs' Sur-Reply) and will be decided on the basis of the Parties' submissions without oral argument.

## II. <u>BACKGROUND</u>

On September 20, 2024, Plaintiffs were driving southbound on I-95. ECF No. 1 ¶ 18. Plaintiff Kim was driving the vehicle, while Plaintiffs Art and Hy sat in the passenger and back seats. *Id.* ¶¶ 13–15. There was heavy traffic and Plaintiff's vehicle was at a stop. *Id.* ¶ 18. Mr.

---

Ryder on June 23, 2025. ECF No. 44. Plaintiffs have also named John/Jane Does and ABC/123 Corporations 1–5, representing unidentified individual and corporate defendants, as Defendants to this action. ECF No. 1 ¶¶ 10–11.

[2] The Court's original Scheduling Order, ECF No. 34 (First Scheduling Order), has since been amended. ECF Nos. 43 (Amended Scheduling Order), 49 (Third Scheduling Order), 69 (Order Clarifying Third Scheduling Order).

[3] The same day, Defendants filed a Partial Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. ECF No. 79. That Motion remains pending before the Court and is addressed in forthcoming Order and accompanying Memorandum Opinion.

Pierre was also driving southbound on I-95. *See id.* ¶ 19. While traveling southbound on I-95, Mr. Mr. Pierre's vehicle truck Plaintiff's vehicle. *Id.* Plaintiffs each sustained injuries from the crash. *Id.* ¶¶ 23–26, 28–31, 33–36.

## III. LEGAL STANDARD

Federal Rule of Evidence 702 regulates the admissibility of expert testimony. FED. R. EVID. 702. Rule 702 provides that:

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

*Id.*

In determining the admissibility of expert testimony, the trial court is "tasked with a rigorous gatekeeping function . . . to ensure that 1) the expert is qualified; 2) the proposed testimony is reliable and concerns matters requiring scientific, technical, or specialized knowledge; and 3) the expert's testimony is sufficiently tied to the facts of the case . . . so that it fits the dispute and will assist the trier of fact." *Cohen v. Cohen*, 125 F.4th 454, 460 (3d Cir. 2025) (cleaned up). Though the trial court is tasked with this undoubtedly "rigorous" task of screening proposed expert testimony, the trial court is also given a degree of flexibility to decide precisely "how" the requirements of *Daubert* standard—codified in the amended Rule 702—are met. *Id.* (citations

omitted). That is, the trial court may Order supplemental briefing or proceedings to determine a proposed expert witness's reliability. *Id.* (collecting cases).

## IV. DISCUSSION

Defendants have moved to preclude the exert testimony of Keith A. Bergman, P.E. ECF No. 81. Defendants argue that Bergman's expert report is replete with inappropriate legal conclusions, is "beyond" Bergman's own qualifications, lacks a reliable methodology, and fails to assist the trier of fact in understanding the relevant issues in this case. ECF No. 81-2 at 2.[4] Plaintiffs oppose the Motion. ECF No. 82. In opposition, Plaintiffs argue that Bergman does not make "legal conclusions,"[5] Bergman is qualified to offer his testimony regarding the operation of a motor vehicle, and Bergman's expert opinions are based on reliable methodology. ECF No. 82-1 at 3–12.

Motions to preclude, or exclude, expert witness testimony are called *Daubert* motions. The terminology comes from the Supreme Court's seminal decision in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). In *Daubert*, the Court held that the Rule 702's standard for expert testimony, adopted in 1975, displaced the long relied upon "general acceptance" test delineated by the United States Court of Appeals for the D.C. Circuit in *Frye v. United States*, 293 F. 1013 (D.D.C. 1923). 509 U.S. at 585–89. In displacing the "general acceptance test," the *Daubert* Court held that under Rule 702, the "trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589.

---

[4] Pagination corresponds to CM/ECF headers.

[5] Plaintiffs clarify that while they *do not* intend to call Bergman to testify regarding any "legal conclusions" or Defendants' purported violations regulations issued by the Federal Motor Vehicle Carrier Safety Administration ("FMSCA"), Plaintiffs do intend to call Bergman to testify that Mr. Pierre was the *cause* of the motor vehicle accident. ECF No. 82-1 at 4.

In response to the Court's decision in *Daubert*, Rule 702 has been amended. FED. R. EVID. 702 advisory committee's note to 2000 amendment. Rule 702 imposes three "duties" on the trial court judge: "(1) [to] confirm the witness is a qualified expert; (2) [to] check the proposed testimony is reliable and relates to matters requiring scientific, technical, or specialized knowledge; and (3) [to] ensure the expert's testimony is 'sufficiently tied to the facts of the case,' so that it 'fits' the dispute and will assist the trier of fact." *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 832 (3d Cir. 2020) (quoting *Daubert*, 509 U.S. at 591).

**A. Bergman is Qualified to Offer Expert Testimony on the Topic of Operating a Motor Vehicle**

*First*, the Court must assess if the expert is qualified to give expert testimony on the topic. The Third Circuit applies "a generally liberal standard of qualifying experts." *Elcock v. Kmart Corp.*, 233 F.3d 734, 742 (3d Cir. 2000) (collecting cases). The threshold for evaluating an expert's qualifications is low, requiring only that the witness possess specialized knowledge greater than that of "an average lay person." *See Waldorf v. Shuta*, 142 F.3d 601, 627 (3d Cir. 1998). This specialized knowledge can come from academic training, credentials, or practical experience. *Elcock*, 233 F.3d at 742 (citations omitted).

Here, Defendants argue that Bergman is not a qualified expert "on trucking" on the trucking industry, or the FMCSA and its regulations. ECF No. 81-2 at 4. Defendants argue that Bergman is therefore unqualified to offer opinions regarding the trucking industry, or the FMCSA and its regulations. *Id.* In opposition, Plaintiffs argue that the Bergman's qualifications easily satisfy the Third Circuit's more generalized standards for expert qualifications. ECF No. 82-1 at 4. Plaintiffs argue that Bergman is specifically qualified to offer the testimony Plaintiffs will elicit from him at trial regarding roadway design, traffic engineering, sight distance, driver perception and reaction,

stopping distance, roadway conditions, and the ability of the driver to perceive and respond to hazards in the roadway. *Id.* at 5.

The Court agrees. Measured against this relatively liberal standard, the Court is confident that Berman is qualified to offer expert testimony regarding the operation of a motor vehicle on a major highway. Bergman has both formal education and professional experience in the field. He has a degree in civil engineering, and he has professional experience working as a highway, street design, and traffic engineering consultant. ECF No. 81-4 at 45. Bergman has been working in the field as an engineer since 1991. *Id.* at 45–46. Thus, Bergman's qualifications match the nature of the testimony he is being offered for. *See id.* Bergman is not offering testimony regarding the FMCSA and its regulations.[6] Nor is Bergman offering testimony regarding the trucking industry practices. Instead, the Report pertains to traffic engineering and driver perception and reaction, both of which are well within his domain and expertise. *See, e.g.*, ECF No. 81-4 at 43. Therefore, the Court is satisfied that Bergman is qualified to offer expert testimony regarding roadway design, traffic engineering, sight distance, driver perception and reaction, stopping distance, roadway conditions, and the ability of the driver to perceive and respond to hazards in the roadway.

**B. Bergman's Testimony Fits the Issues of the Case**

*Second*, the Court must assess whether the proposed testimony is relevant or "fits" the issues in the case. *Daubert*, 509 U.S. at 579. Expert testimony is admissible only if it "is sufficiently tied to the facts of the case [such] that it will aid the jury in resolving a factual dispute." *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985). Trial courts retain discretion to exclude the testimony of expert witnesses where "there is simply too great an analytical gap

[6] As discussed *infra* Part IV(B)(2), the Court will exclude any statements from the Report in which Bergman references or opines on the "Star Laundry Defendants'" compliance with the regulations of the FMCSA, or if the "Star Laundry Defendants" violated the FMCSA's regulations.

between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (citation omitted). But the trial court's discretion is not unlimited. *See Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006).

As relevant here, the trial court must always "ensure that an expert does not testify as to the governing law of the case." *Id.* As the Third Circuit has explained,

> [a]lthough Federal Rule of Evidence 704 permits an expert witness to give expert testimony that embraces an *ultimate issue to be decided by the trier of fact*, an expert witness is prohibited from rendering a legal opinion . . . [s]uch testimony is prohibited because it would usurp the [trial court's] pivotal role in explaining the law to the jury.

*Id.* (emphasis added) (internal quotation marks and citations omitted). Legal conclusions are confusing and are necessarily not helpful to a jury and are excluded from trial. *See id.*

Here, Defendants argue that Bergman's expert report contains several legal conclusions, or opinions. ECF No. 81-2 at 3–4. Defendants specifically point to places in the Report where Bergman concludes that Mr. Pierre violated the Pennsylvania Motor Vehicle Code, that Mr. Pierre's conduct was *reckless* or *negligent*, and that Mr. Pierre's conduct was the cause of the motor vehicle accident. *Id.* at 3 (citing ECF No. 81-4 at 42–44). Defendants also point to areas of Bergman's expert report where he similarly concludes that Star Logistics and Hospitality Services, LLC[7] engaged in *reckless* or *negligent* compliance practices regarding the FMCSA and that these practices were *a* cause of the motor vehicle accident. *Id.* (citing ECF No. 81-4 at 42–44).

---

[7] The Court notes that Bergman expressly refers to the "Star Laundry Defendants" in the cited portion of Bergman's expert report, not Star Logistics. ECF No. 81-4 at 42–44. Defendants Star Logistics and Hospitality Services, LLC and Mr. Pierre bring the instant Motion. *See* ECF No. 81. In their brief, Defendants address the fact that while the Complaint names as Defendants Star Laundry, Inc., Clean World Laundry Corp., and Star Logistics Services, LLC, that Star Logistics and Hospitality Services, LLC, referred to therein as "Star Logistics," is the "operative defendant" because it has admitted that Mr. Pierre was its employee. ECF No. 81-2 at 1 n.1.

In opposition, Plaintiffs argue that while they *do not* intend to call Bergman to testify regarding any "legal conclusions" regarding Defendants' purported violations of the FMCSA's regulations, Plaintiffs *do* intend to call Bergman to testify that Mr. Pierre was the cause of the motor vehicle accident. ECF No. 82-1 at 4. Plaintiffs argue that Bergman's conclusion that Mr. Pierre was the cause of the motor vehicle accident is not a legal conclusion, but rather is permissible expert testimony permitted within the Third Circuit. *Id.*

**1. Bergman's Conclusions Regarding Mr. Pierre's Conduct**

Upon review, the Court finds that the Report does contain several improper legal conclusions that must be excluded from trial. Throughout the Report, Bergman offers conclusions that Mr. Pierre and Start Logistics and Hospitality Services LLC violated various statues and regulations, or acted recklessly, negligent, or willfully. Several of those conclusions are provided below:

- "The driving actions of Johny Pierre violated the Pennsylvania Vehicle Code, Title 75[.]" ECF 81-4 at 30
- "The driving actions of Johny Pierre were reckless and willfully endangered the safety on motorists… and caused this incident to occur." *Id.*
- "Johny Pierre operated his vehicle *recklessly*, *negligently*, and in *violation of multiple motor vehicle regulations*, and caused this incident to occur. Violation of Pennsylvania Vehicle Code, Title 75 by Johny Pierre was *reckless* and played a role in the cause of this incident." *Id.* (emphasis added).
- "The totality of Johny Pierre's violations demonstrated a complete and *willful disregard* for the safety of southbound traffic on Interstate 95." *Id.* at 31 (emphasis added).
- "Had Johny been *reasonably* attentive . . . this incident would have been avoided[.]" *Id.*

- "The inattentive, *reckless*, and *negligent* driving actions of Johny Pierre were a cause of this incident." *Id.* (emphasis added).
- While not cited for Distracted Diving and/or Driving While Intoxicated, violation of these sections of Pennsylvania Vehicle Code, Title 75 by Johny Pierre were reckless, negligent, and played a role in the cause of this incident." *Id.* at 42.

Upon review, the Court finds that these statements constitute impermissible legal conclusions that divest the Court's authority and duty to instruct the finder of fact as to the applicable law in this case. *First,* Bergman's conclusions that Mr. Pierre (1) acted *recklessly*; (2) acted *negligently*; (3) *willfully* endangered the safety of motorists; (4) failed to be *reasonably* attentive; and (5) *caused* the accident will be excluded. This is an action seeking damages caused by Defendants' *alleged* negligence. *See* ECF No. 1. Plaintiffs are trying to prove that Mr. Pierre was negligent. *See id.* Here, Bergman's conclusions regarding Mr. Pierre's reckless, negligent, and/or willful conduct "contain terms and standards with technical legal meaning beyond the proper scope of expert testimony and could confuse the jury." *Slappy-Sutton v. Speedway LLC*, CV No. 16-4765, 2019 WL 8137127, at *3 (E.D. Pa. Oct. 10, 2019) (excluding Bergman's expert testimony regarding what was "foreseeable" and "reasonable" in the context of a negligence cause involving premises liability (collecting cases)). The Court finds that offering expert testimony using these terms and standards when opining on Mr. Pierre's conduct will not aid the trier of fact in this case, a jury. Instead, these kinds of conclusions will mislead and confuse the jury.

*Next*, Bergman's various conclusions that Mr. Pierre violated Pennsylvania Motor Vehicle Code Title 75, ECF No. 81-4 at 25, 27, 30, 42, also constitute improper legal conclusions and will be excluded. Bergman concludes that Mr. Pierre violated Pennsylvania Motor Vehicle Code Title 75 §§ 3327 (Duty of driver in emergency response area and in relation to disabled vehicles),

3309(1) (Driving within a single lane), 3310(a) (Following too closely), 3714(a) (Careless driving), and 3736(a) (Reckless driving). *Id.* These conclusions are improper because they while these are not the kind of statutes that are sufficiently specific as to the kind of conduct they prevent for a violation itself to constitute negligence *per se*,[8] they require a similar if not identical standard to the governing law of the case: common law negligence. *See* ECF No. 81-4 at 28–29 (providing relevant Pennsylvania Motor Vehicle Code language. To conclude that Mr. Pierre acted *negligently*, *recklessly*, or *willfully* is precisely the kind of question that must go to the jury in this case. For that reason, the Court will exercise its discretion at this preliminary posture to exclude these statements from trial.

Therefore, Defendants' Motion will be granted in part and denied in part as to the conclusions identified above. Accordingly, the conclusions identified above must be excluded at trial and Bergman is precluded from offering the same or similar testimony during trial.

---

[8] Under Pennsylvania state law, to prove a claim of negligence based on negligence *per se*, the Plaintiff must prove *inter alia* that the defendant "violate[d] the statute or regulation" at issue. *Wagner v. Anzon, Inc.*, 684 A.2d 570, 574 (Pa. Super. 1996) (citing *Kaplan v. Phila. Trans. Co.*, 171 A.3d 166 (Pa. 1961)). However, the plaintiff must also prove that "the purpose of the statute [or regulation] [is] . . . , at least in part, to protect the interest of a group of individuals, as opposed to the public generally[.]" *Id.* (citation omitted); *Shamnoski v. PG Energy, Div. of S. Union Co.*, 858 A.2d 589, 601 (Pa. 2004) ("the statute at issue would have to be so specific as to leave little question that a person or entity found in violation of it deviated from a reasonable standard of care[,]" as opposed to "very general statements of what constitutes compliance or deviation[.]"). The Pennsylvania Supreme Court has analyzed the issue of negligence *per se* in the context of the Motor Vehicle Code. *See Shamnoski*, 858 A.2d at 601. There, the Court used the Motor Vehicle Code as an example to illustrate the difference between a statute that was sufficiently specific as to what was prohibited conduct and one that was not. *See id.* The Court explained, a Section that requires a "reasonable and prudent speed is unspecified;" but a later Section that "sets forth the specific numeric limits on vehicle speed which every Pennsylvania driver must obey" would be sufficient to constitute a statute, under which a violation would constitute evidence of negligence *per se*. *Id.* (citations omitted).

**2. Bergman's Conclusions Regarding the "Star Laundry Defendants'" Conduct**

Bergman also offers several conclusions as to the role that the "Star Laundry Defendants" ("Star Laundry") played in the motor vehicle crash. ECF No. 81-4 at 42. Bergman focuses primarily on Star Laundry's compliance with applicable federal regulations. A selection of those conclusions are identified below:

- "The actions and/or inactions of Star Laundry played a role in the cause of this incident." *Id.*
- "Had Star Laundry Defendants complied with Code of Federal Regulations - Title 49 - Transportation, this incident could have been avoided." *Id.*

For the same reasons that Bergman may not offer conclusions that Mr. Pierre violated the Pennsylvania Motor Vehicle Code, Bergman may not conclude that Star Laundry violated the FMCSA's regulations, or that Star Laundry's violation of the FMCSA's regulations was *a* cause of the accident. *See supra* Part IV(B)(1). These conclusions will also confuse the jury and improperly attempt to instruct the jury on the law of the case. *See id.* The issue of whether Defendants caused the accident are questions that the jury must answer based on the applicable causation standards that the Court, not an expert, must instruct. *See id.*

Accordingly, these statements will also be excluded; Bergman may not testify regarding whether Star Laundry violated or failed to comply with the FMCSA, or whether Star Laundry was ultimately the or a cause of the motor vehicle.

**C. Bergman's Testimony is Based on Reliable Methodology**

*Third*, the court must assess if the methodology used by the expert is reliable. As relevant here, "*Daubert*'s reliability requirement ensures that an expert's testimony is "based on the methods and procedures of science, not on subjective belief and unsupported speculation." *Cohen*,

125 F.4th at 461–62 (quoting *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 80–81 (3d Cir. 2017)). This does not require that the expert's testimony "have the best foundation, . . . or . . . [be] supported by the best methodology or unassailable research." *Id.* at 462 (quoting *Karlo*, 849 F.3d at 81). That places the bar too high. *See id.* (citation omitted). Instead, the testimony must have what the *Daubert* Court called, "good grounds." *Id.* (quoting *UGI Sunbury*, 949 F.3d at 834). The trial court's determination of whether the testimony has "good grounds" should be guided by consideration of the *Daubert* factors. *Id.* (citation omitted). These factors include:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Id.* (citing *UGI Sunbury LLC*, 949 F.3d at 834).

Here, Defendants argue that Bergman's conclusions in the Report lack any reliable methodology. ECF No. 81-2. In response, Plaintiffs direct the Court to portions of the Report that explicitly reference not only the record citations to evidence such as police crash reports, witness statements, and deposition testimony, he explicitly references and applies the highway design policies to form his opinions. ECF No. 82-1 at 7–12.

Upon review, the Court is satisfied that Bergman's expert report has "good grounds," and should not be excluded at trial. The Report utilizes reliable standards of the he explicitly references and applies American Association of State Highway and Transportation Officials (the "AASHTO") Policy on Geometric Design. The AASHTO Policy is a recognizable and reliable set of maintained standards. Further, this is an area of expertise specifically within Bergman's

qualifications. *See supra* Part IV(A). To apply the AASHTO Policy, Bergman performed inspections of I-95, applied policy and state Motor Vehicle Code to determine sight distance upon which his conclusions are based reliable information about the crash and the crash site. ECF No. 81-4 at 18. Bergman calculated the sight distance to determine the required safe stopping distances and based on the sight distance the available stopping distance for Mr. Pierre exceeded what was considered a safe distance. *Id.* at 25–27. The Court is satisfied that Bergman's conclusions in the Report, apart from those discussed *supra* Part IV(B)(1)–(2), are based on reliable methodology.

## V. CONCLUSION

For the reasons set forth above, the Court will **GRANT in part** and **DENY in part** Defendants' Motion to Exclude the Expert Testimony of Keith A. Bergman (ECF No. 81). The conclusions and/or opinions in the Report that constitute improper legal opinions will be excluded. An appropriate Order will follow.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**